IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GLORIA DUNIPHIN, ) | |
| ) | |
|     **Plaintiff** ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | |
| BENNY WHITEHEAD, INC. and ) | 2:06-cv-00459-MHT |
| PEOPLEASE CORPORATION. ) | |
| ) | |
|     **Defendants.** ) | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Gloria Duniphin, Plaintiff in the above styled action, and submits this Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. By separate document, Plaintiff files her evidentiary submissions in support of her opposition to Summary Judgement.

### STATEMENT OF PLAINTIFF'S MATERIAL FACTS

1. Gloria Duniphin is a white female with the date of birth of August 7, 1954. (Affidavit of Duniphin). She was over forty years of age at all times when she worked as a truck driver. She was hired on December 10, 2003 by Benny Whitehead, Inc. (Affidavit of Duniphin). She was a recent graduate of truck driving school with no truck driving experience. (Affidavit of Duniphin).

2. Benny Whitehead, Inc. (hereinafter BWI) is a trucking company located

in Eufaula, Al. (Ex. b of Def's MSJ, Affidavit of BP Whitehead). BWI primarily assigns truck drivers as team drivers who make runs to the west coast to obtain produce for delivery on the east coast. (Ex. b of Def's MSJ, Affidavit of BP Whitehead). It takes approximately one week for the team drivers to make a run.

   3. When Duniphin was hired, she did not know any truck drivers employed with BWI. (Ex. 9, Affidavit of Duniphin). She was assigned a team driver, Mike Duniphin. (Affidavit of Duniphin). She worked as a team driver with Mike Duniphin until she had an accident on September 30, 2004 in El Paso, Texas. (Ex. 9, Affidavit of Duniphin). Duniphin received injuries in the accident and had to have surgery on her elbow. (Ex. 9, Affidavit of Duniphin). She was off work and unable to drive for a period of time. (Ex. 9, Affidavit of Duniphin).

   4. When hired, the Plaintiff did not know Mike Duniphin. (Ex. 9, Affidavit of Duniphin). However, their friendship developed into a romantic interest and they were married on June 5, 2004. (Ex. 9, Affidavit of Duniphin). After her worker's' compensation injury and while Duniphin was off work, she and her husband attended a Christmas party. (Ex. 9, Affidavit of Duniphin). Her husband unknowingly ate some brownies which contained marijuana. (Ex. 9, Affidavit of Duniphin). Her husband then failed a random drug test and was fired by BWI. (Ex. 9, Affidavit of Duniphin). Duniphin was released and returned to work from her worker's compensation injury in February 2005. (Ex. 9, Affidavit of Duniphin).

   5. BWI again assigned a team driver to work with Duniphin. (Ex. 9, Affidavit of Duniphin). This time the team driver was D.A. Bryant. (Ex. 9, Affidavit of Duniphin). Duniphin made two trips to California with D.A. Bryant. (Ex. 9, Affidavit of Duniphin). Then

Duniphin developed congestive heart failure and was unable to work. (Ex. 9, Affidavit of Duniphin). She was hospitalized and underwent surgery to insert some stents. (Ex. 9, Affidavit of Duniphin). This was an approved FMLA leave. (Ex. 9, Affidavit of Duniphin).

6. On June 16, 2005, BWI acknowledges receipt of Duniphin's medical release from FMLA leave. (Ex. b of Def's MSJ, Affidavit of BP Whitehead, p. 5).

7. BWI leases its employees from Peoplease Corporation. (Ex. f of Def's MSJ, Affidavit of Hiott). Peoplease is a professional employment organization. (Affidavit of Hiott). Its clients are only transportation or trucking companies. (Dep. Hiott, pp. 10-11). It provides administrative services including payroll and compliance with various employment laws. This allows trucking companies to offer benefits to its employees and also allows trucking companies to concentrate on their core activity, which is moving freight. (Dep. Hiott, p. 10). Peoplease handles all the employment details. Obviously, the client must provide payroll information, communicate work status, etc. in order for this relationship to work.

8. Peoplease is located in South Carolina. (Ex. f of Def's MSJ, Affidavit Hiott). BWI is located in Eufaula, Al. (Ex. b of Def's MSJ, Affidavit BP Whitehead). Duniphin is dispatched from Eufaula, Alabama. (Dep. Duniphin, p. 44). She never communicates with Peoplease but she does receive a paycheck from Peoplease each week. (Dep. Hiott, p. 12). Her employment related benefits come from Peoplease. (Dep. Hiott, p. 12). Peoplease is reimbursed from BWI and receives a premium payment over and above the salary, withholding, and employment related benefits. (Pl's Ex. 4).

9. Peoplease and BWI are joint employers of Duniphin. (Dep. Hiott, p. 21). They both have a duty to comply with the FMLA. (Dep. Hiott, pp. 58-59). They both

are responsible for violations of Title VII and the ADEA. (Dep. Hiott, p. 58).

10. After her FMLA leave, Duniphin took her release to her supervisor at BWI in Eufaula. (Dep. Duniphin, p. 70). She provided the release to Stacy. (Dep. Duniphin, p. 70). BWI has a contractual obligation to provide this document to Peoplease. (Pl's Ex. 4). This was not done until December 1, 2005. (Dep. Hiott, p. 28). Peoplease documents show that Duniphin voluntarily quit because she did not receive paycheck for several months. (Pl's Ex. 3). In fact, BWI claims it was looking for a partner for Gloria Duniphin from June of 2005 until December 2005. (Ex. b of Def's MSJ, Affidavit BP Whitehead, p. 5). BWI claims it could not find Duniphin a suitable partner. In August 2005, Duniphin wrote BWI. (Pl's Ex. 8). She contacted BWI approximately weekly to discuss her status. (Ex. 9, Affidavit of Duniphin). She was always told they were looking for a partner for her. (Ex. 9, Affidavit of Duniphin).

11. On December 1, 2005, approximately six months after she was released to return to work, Duniphin called Peoplease. (Dep. Duniphin, p. 102). She spoke with Pam Ozmore, benefits administrator. (Dep. Duniphin, p. 102). She was told that Peoplease had never received her FMLA release form which she took to BWI in June. (Dep. Duniphin, p. 108). She was also told that Peoplease showed her as being a voluntary quit because she did not receive a paycheck for several months. (Dep. Duniphin, pp. 102,110).

12. After obtaining this information, Duniphin filed an EEOC charge against Peoplease and BWI. (Ex. 9, Affidavit of Duniphin). Duniphin also filed for unemployment benefits. (Ex. 9, Affidavit of Duniphin). At her unemployment hearing, Eddie Whitehead maintained that she was not entitled to unemployment because she was still an employee of BWI. (Ex. 9, Affidavit of Duniphin).

13. On December 1, the day that Duniphin spoke with Peoplease, BWI faxed the FMLA return to work authorization to Peoplease. (Dep. Hiott, p. 28). On December 5, 2005 Duniphin wrote Benny Whitehead. (Pl's Ex. 10). On December 9, 2005, Whitehead wrote Duniphin. (Pl's Ex. 12). Whitehead sent her her "hold-back money". (Pl's Ex. 12). Hold-back money is money that is deducted from payroll so that if a person separates from BWI and owes them money, the trucking company has a way to obtain it. (Ex. b to Def's MSJ, Affidavit Eddie Whitehead, p. 3).

14. Since December 2005, the Plaintiff has not worked as a truck driver. (Pl's Ex. 9, Affidavit Duniphin). BWI maintains that it is still looking for her a partner. On December 9, 2005, Whitehead wrote Plaintiff and first told her that it was her responsibility for finding a partner. (Pl's Ex. 12). Plaintiff does not have anyway to know who are the current employees of BWI. (Pl's Ex. 9, Affidavit Duniphin). Plaintiff does not have any way to contact employees of BWI. (Pl's Ex. 9, Affidavit Duniphin). Whitehead claims it cannot provide this information because it is confidential. (Dep. Whitehead, p. 24).

15. BWI employs over 100 truck drivers. (Dep. Whitehead, p. 14). Approximately 10% of its workforce are hired directly from truck driving school with no experience. (Dep. Whitehead, p. 14). All these persons must be placed with a trainer. (Dep. Whitehead, p. 17). Whitehead maintains that drivers must have two years experience on the road before they can be assigned solo runs. (Ex. b to Def's MSJ, Affidavit Eddie Whitehead). BWI also claims that if you do not have two years experience, you must be partnered with someone who does. (Dep. Whitehead, p. 17).

16. Robert Kirkham was a truck driver hired out of truck driving school on April 2003. (Dep. Whitehead, pp. 55-57). Kirkham worked for five months as a truck driver.

(Dep. Whitehead, pp. 55-57). His wife then graduated from truck driving school. (Dep. Whitehead, pp. 55-57). Robert Kirkham was assigned to work with his wife though neither had two years experience. (Dep. Whitehead, pp. 55-59). BWI states that they have some leeway on the two year requirement, and one must have a clean driving record work under these circumstances. (Dep. Whitehead, pp. 55-59; 67-68). BWI claims the fact that Duniphin was involved in an accident, even though it was not her fault, prevents her from being so assigned. (Dep. Whitehead, p. 68).

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

"As the moving party, [the defendant] has the burden of showing the absence of a genuine issue of material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir. 1993). The district court cannot weigh conflicting evidence or make credibility determinations; instead, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hairston*, 9 F.3d.

The substantive law defines which facts are "material." A factual dispute is "genuine" if "a reasonable jury could return a verdict for the non-movant," and there is "a real basis

in the record" for the factual dispute. *Hairston,* 9 F.3d at 919.

## ARGUMENT

### 1. Duniphin Has Established a Prima Facie Claim

Duniphin has evidence to meet her burden of establishing a prima facie case for each of her three claims asserted under the FMLA, Title VII and ADEA.

#### A. Plaintiff Has Demonstrated a Prima Facie FMLA Claim

Court's have recognized two types of claims a plaintiff may bring pursuant to the FMLA; interference and retaliation claims. *Smith v. Boyd Brothers Transportation, Inc.*, 406 F. Supp 2d 1238 (M. D. Ala. 2005). In an interference claim, a plaintiff must show only an entitlement to the benefit denied by the employer. *Smith, supra*. In this case, Plaintiff was denied the benefit of being returned to equivalent employment after her return from FMLA leave. The Plaintiff has not worked as a truck driver since she was authorized to return from FMLA leave in June 2005.

The 30(b)(6) representative of Peoplease has acknowledged that BWI and Peoplease are joint employers. (Dep. Hiott, p. 21). She has acknowledged that both have a duty to comply with the FMLA. (Dep. of Hiott, p. 58). She has acknowledged that Plaintiff was not returned to comparable work after her FMLA leave. (Dep. Hiott, pp. 58-59). Thus, both Defendants have failed to comply with the FMLA, and Plaintiff is entitled to judgement as a matter of law on her FMLA interference claim as to both Defendants.

Gloria Duniphin is not a current employee of Peoplease. (Dep. Hiott, p. 20). She is in their system as a voluntary quit as not returning from FMLA leave. (Dep. Hiott, p. 20).

Likewise, Plaintiff's FMLA retaliation claim goes to the jury because she has proven

that 1) she engaged in a statutorily protected activity (making a claim under FMLA); 2) she suffered an adverse employment decision (constructive discharge); and 3) the adverse employment decision was causally related to the protected activity (close temporal relationship, etc.). *Smith v. Boyd Brothers Transportation, Inc.*, at 1243.

The Defendant argues that the Plaintiff has not suffered an adverse employment action. This claim is made because "her position is still available to her." (Def's brief, p. 22). However, the undisputed fact is that the Plaintiff has not worked as a truck driver since she was authorized to return to work from FMLA leave in June 2005. Plaintiff was making $800.00 per week as a truck driver. To suggest that the Plaintiff has not suffered an adverse employment action is ludicrous. She has lost almost $70,000.00 in wages.

The question of what constitutes an adverse employment action was clearly defined in the case of *Bass v. Board of County Commissioners*, 265 F. 3d 1095 (11th Cir. 2001) which held:

> "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that <u>alters the employee's compensation</u>, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or <u>adversely affects</u> his or her <u>status as an employee</u>." *Gupta v. Florida Board of Regions, 212 F. 3d 571, 587 (11th Cir. 2000)* "Conduct that falls short of an ultimate employment decision must meet 'some threshold level of substantiality... to be cognizable under the anti-retaliation clause'" of Title VII. (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F. 3d 1453, 1456 (11th Cir. 1998)). While "not everything that makes an employee unhappy is an actionable adverse action," *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996), <u>conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under Title VII.</u> See *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999); *Robinson v. City of Pittsburgh*, 120 F. 3d 1286. 1300

> (3d Cir. 1997). The question of whether an employee has suffered a <u>materially adverse employment action will normally depend on the facts of each individual case</u> ... We conclude that the Division's actions which deprived Bass of compensation which he otherwise would have earned clearly constitute adverse employment actions for purposes of Title VII. *Bass*, at 1118. emphasis added.

That she has sustained an adverse employment action is beyond serious dispute.

On two prior occasions, (1) when the plaintiff was initially hired and (2) when she returned to work from a worker's compensation injury, the Defendant assigned her a partner. The undisputed evidence in this case is that the only person who BWI has not assigned a partner is the Plaintiff. (Dep. Whitehead, p. 24). BWI employs over 110 drivers. (Dep. Whitehead, p. 14). Approximately 10% of its work force comes direct from truck driving school. (Dep. Whitehead, p. 14). These hires have no experience and must be assigned to work with a trainer. All new hires have been assigned a trainer. Only Duniphin has not. (Dep. Whitehead, p. 24). Duniphin was twice previously assigned a partner. Only after her FMLA leave did the Defendant allegedly have difficulty finding a partner for her. Males and persons under age 40 have been assigned a partner by BWI. (Dep. Whitehead, p. 94). BWI is a small family-owned business. (Dep. Whitehead, p. 12). Benny Whitehead and his two sons make the driving assignments. (Dep. Whitehead, pp. 17-18). They have not assigned Duniphin a partner for 21 months.

When an employee's need for FMLA leave due to a serious medical condition is unforeseeable, she is not required to give advance notice. "The employee need only to provide his employer with notice sufficient to make the employer aware that his absences is due to a potentially FMLA qualifying reason. *Gay v. Gilman Paper Company*, 125 F. 3d

9

1432, 1436 (11th Cir. 1997). Once an employee taking unforeseeable leave informs his employer that potentially FMLA qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection. (See Id. ). "The employer will be expected to obtain any additional required information through informal means." *Strickland v. Water Works and Sewer Board of Birmingham*, 239 F. 2d 1199, 1208 -1209 (11th Cir. 2001).

Here there is no dispute that Duniphin gave the proper notice and provided the proper medical documentation. (Depo. of Hiott, p. 67). There is no dispute that the Plaintiff gave her return to work slip to her supervisor at BWI. (Ex. b of Def's MSJ, Affidavit of BP Whitehead, p. 5). According to BWI, this occurred on June 16, 2005. (Ex. b of Def's MSJ, Affidavit of BP. Whitehead, p. 5). From the time BWI acknowledges receiving Ms. Duniphin's return to work authorization (June 16, 2005), BWI did not provide the authorization to Peoplease until December 1, 2005. (Dep. of Hiott, p. 28). Even though they are joint employers, and even though BWI had a contractual obligation to do so, BWI did not send the authorization to Peoplease until December. (Pl's Ex. 4).

On December 1, 2005, Duniphin called the offices at Peoplease. (Dep. of Duniphin, p. 102). She had previously never spoken to anyone at Peoplease, despite the fact they were her joint employer along with BWI from December 2003. (Dep. of Duniphin, p. 41). All Plaintiff's contact was with representatives of BWI. BWI provided her payroll information to Peoplease, BWI dispatched her, and BWI provided her all necessary instructions and even provided the Peoplease forms that she signed. When Plaintiff returned from her worker's compensation injury, she provided her medical release authorizations to BWI. (Dep. of Duniphin, p. 52). When she returned from FMLA leave,

10

she returned her authorization to her supervisor at BWI. (Dep. of Duniphin, p. 70). No one at Peoplease knew that Duniphin had returned from her FMLA leave in June until she called them in December. (Dep. of Duniphin, p. 102).

On December 1, 2005, Duniphin was told by Pam Ozmore, Peoplease's benefit administrator, that their records showed that she had voluntarily quit. (Dep. of Duniphin, p. 102). This was after six months of contact with BWI wherein BWI alleged that they were having difficulties finding her a partner to team drive with. It was only after Peoplease contacted BWI on December 1, 2005 that they received the authorization that Duniphin had returned to BWI in June. (Pl. Ex 2, Hiott).

After being told that she had voluntarily quit, Plaintiff filed her EEOC charge against both BWI and Peoplease. (Ex. 9, Affidavit Duniphin). She also made a claim for unemployment benefits. (Ex. 9, Affidavit Duniphin). Plaintiff was denied unemployment from the Georgia unemployment office, because representatives from BWI maintained that she was still employed. (Ex. 9, Affidavit of Duniphin). BWI also first asserted in December 2005 that Duniphin had the responsibility for providing her own driving partner for her team. (Pl's Ex. 12)

Duniphin does not know who the drivers are that are employed by BWI. (Ex. 9, Affidavit Duniphin). She does not know who had more than two years driving experience. BWI refuses to provide her with that information, maintaining that driver names and phone numbers are "confidential". (Dep. of B.P. Whitehead, p. 24). At the same time, BWI maintains that it is Duniphin's responsibility to find a driver. (Pl's Ex. 12). This in spite of the fact that BWI has twice assigned drivers to her before she went on FMLA leave. BWI has never contacted a driver and asked them to waive this asserted "confidentiality."

Duniphin is the only person employed by BWI who has not been provided a partner by BWI. (Dep. of B.P. Whitehead, p. 24).

Deb Hiott, HR manager at Peoplease, acknowledges that not being assigned a load for six months is a reasonable period of time so that an employee can reasonably expect that they no longer have a job. (Dep. of Hiott, p. 63). Thus, Hiott acknowledges what is obvious. Duniphin has in effect been constructively discharged from Peoplease and BWI.

As could be seen, Duniphin has sustained an adverse employment action. The proof that BWI did not even provide the authorization to Peoplease, manifests an intention to violate the FMLA. That BWI did not provide the release documents for six months, while having weekly contact with Duniphin who was attempting to return to work, demonstrates a wanton disregard of Duniphin's federal rights. BWI has a contractual obligation to provide the authorization to Peoplease in a timely fashion. (Ex. 4, Section 3.12). Six months is an unreasonable period of time to delay transmitting that information. (Dep. of Hiott, p. 65).

The Plaintiff has never refused work as a truck driver. (Ex. 9, Affidavit Duniphin). Plaintiff has never been offered work from BWI since her FMLA leave, except a notice that she would go out in the future. (Ex. 9, Affidavit Duniphin). However when she contacted BWI to determine when she would report to work she was notified that the alleged new team driver had backed out. (Ex. 9, Affidavit Duniphin).

**B.   Duniphin Has Proven a Prima Facie Case Title VII Gender Discrimination**

The Supreme Court has emphasized that a plaintiff''s burden in establishing a prima

facie case "is not onerous;" it serves only to "eliminate] the most common nondiscriminatory reasons" for the challenged action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981); see also *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir 1997) ("demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination"). The Eleventh Circuit has "generally eschew[ed] an overly strict formulation of the elements of a prima facie case." *Maddow v. Proctor & Gamble Co.*, 107 F.3d 846, 851 (11th Cir. 1997); see also *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 440 (11th Cir. 1996) (emphasizing that "any prima facie case test must be flexible").

    The Eleventh Circuit stated:

> We have repeatedly emphasized that the requisite showings that make up a prima facie case are not meant to be rigid or inflexible. In cases where the evidence does not fit neatly into the classic prima facie case formula, for example, we have stated that "[a] prima facie case of disparate treatment can be established by any 'proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'"

*Schoenfield v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999).

    In the typical discriminatory discharge case, a Plaintiff establishes a prima facie by showing that he or she was a member of a protected class, was qualified for the job, was discharged, and was replaced by someone outside the protected group. See *Zuben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997).

    Here, Duniphin is a female. (Affidavit Duniphin). She is obviously qualified for the job as a truck driver, as she had a CDL and worked as a driver prior to her FMLA leave.

The parties can argue as to whether she has been constructively discharged. However, there is no argument that she has not worked and has not earned the money as a truck driver since June 2005. Clearly this is an adverse action. It has seriously impacted her compensation. She was making $800.00 per week. To lose that income is an adverse action under any definition. Fourth, BWI takes the position that Duniphin was not replaced. (See Answers to Interrogatories #7). However, before her FMLA leave, Plaintiff was assigned to work with D.A. Bryant. After Plaintiff went off on leave, Bryant was partnered with Randy Luker. (Ex. d of Def's MSJ, Affidavit Bryant). Luker is a white male, age forty-nine. (Pl's Ex. 11). Obviously, there is evidence that Duniphin was replaced by a male. Thus, she makes out a prima facie case of gender discrimination.

The Defendant's explanation for not assigning a partner for Duniphin is that they cannot find her a suitable partner. Plaintiff's evidence of pretext is demonstrated by the fact that on two prior occasions BWI assigned her a partner. Plaintiff's further evidence of pretext is that the only person in the history of BWI who has not been provided a partner is Duniphin. How can she provide better evidence of pretext? The burden on Duniphin is only to show such weaknesses, implausibilities, inconsistencies, incoherency, or contradictions in the employer's preferred legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence. *Combs v. Plantation Patterns*, 106 F. 3d 1519, 1528 (11th Cir. 1997). Duniphin has clearly met her burden of proving pretext. BWI, as a employer, can assign any one of its employees to partner with Duniphin. It has not done so in 21 months.

Plaintiff's most powerful evidence of pretext is that BWI states it considers her to still be employed. But BWI sent a document (Pl's Ex. 6). to Peoplease, saying Plaintiff

14

voluntarily quit. This undated document, which had to be authorized by BWI, was sent to Peoplease and is in Duniphin's personnel file. (Dep. Whitehead, pp. 83-84). This document is inconsistent with BWI's position that Duniphin is still employed.

### C. Duniphin's Prima Facie ADEA Claim

Plaintiff proves her prima facie case by showing disparate treatment. That is, she alleges she has been treated differently than persons under age forty.

The Defendant BWI contends that has been unable to find a suitable partner for Plaintiff Duniphin. Duniphin is over forty years of age. However, BWI admits that it has found suitable partners for employees under age forty. (Dep. Whitehead, p. 94). Furthermore, BWI contends that it cannot place you with a partner if both people have less than two years driving experience. However, BWI has done just that with respect to placing Dusty Haire, a new graduate from truck driving school. Thus, BWI has both allowed people under age forty (Dusty Haire) and males to be partnered with persons who did not have two years driving experience (Kirkham). (Dep. Whitehead, pp. 58-59). This clearly shows that BWI has treated persons who are not female and not over age forty differently than males and persons under age forty. Since Duniphin is the only person BWI can name that has not been provided partner, this establishes pretext. It is clear that BWI has preferred males and people under age forty.

BWI has never given any reason why it cannot assign an employee to work with Duniphin. Employers are free to make assignments. Here BWI had a statutory obligation under the FMLA to assign Duniphin to equivalent work. BWI has not met that obligation.

## CONCLUSION

Counsel for Plaintiff submits that Duniphin's Title VII gender, ADEA and FMLA claims should all be considered under the same legal analysis, the circumstantial evidence test under *McDonnell Douglas*. Duniphin has submitted substantial evidence that she was the victim of age, gender, and FMLA discrimination, and that Defendant's articulated reasons for her not being assigned a partner is but a pretext for discrimination. Accordingly, Duniphin's case should be submitted to the jury as there are material issues of fact which preclude the entry of Summary Judgment.

Respectfully submitted,

s/Jerry Roberson
Jerry Roberson (ROB010)
Roberson & Roberson
3765 Kinross Drive
P.O. Box 380487
Birmingham, Alabama 35238-0487
Phone Number:    205.981.3906
Fax Number:       205.981.3908
E-mail: jdratty@charter.net
          tlbaker@charter.net

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 28th day of February, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Courtney R. Potthoff, Esq.
Joel P. Smith, Esq.
WILLIAMS, POTTHOFF, WILLIAMS
& SMITH, L.L.C.
Post Office Box 880
125 South Orange Avenue
Eufaula, Alabama 36027


Jim S. Carlton, Esq.
226 East Broad Street
P.O. Box 895
Eufaula, Alabama 36072-0895

                                              s/Jerry Roberson
                                              Jerry Roberson (ROB010)