# SERVICE AGREEMENT

This Service Agreement is made as of the 29th day of July 2005, by and between PeopLease Corporation, a South Carolina corporation qualified and licensed to do business in South Carolina (hereinafter referred to as "PLC") and BENNY WHITEHEAD, INC. (hereinafter referred to as "Customer") and whose Federal Tax Identification No. is: 63-0822076.

### Recitals

A.  PLC is a professional employer organization ("PEO") engaged in the business of leasing its employees to various businesses.

B.  Customer desires to lease employees of PLC to assist Customer in the operation of its business on the terms and conditions herein contained.

C.  PLC desires to lease its employees to Customer on the terms and conditions herein contained.

### Agreement

NOW, THEREFORE, in consideration of their mutual promises and other valuable consideration, PLC and Customer agree as follows:

1. **Lease of Employees**

    1.1 **Term of Lease Period**
    Effective with the regularly scheduled payroll period of July 27th through August 2nd, 2005, payable on Friday, August 5th, 2005, Customer shall lease employees of PLC in accordance with the terms and conditions set forth herein. The initial term of this Agreement shall be one year, subject to termination provisions found in Section 6 herein and shall automatically renew and continue in full force and effect for successive one year terms until terminated by either party or both parties, subject to the provisions of Section 6 herein.

    1.2 **Payment**
    At the end of each work week, but in no event less than forty-eight (48) hours prior to the date upon which PLC is obligated to issue payroll to the Assigned Employees (as designated in Section 2.1 of this Agreement), Customer shall, by facsimile transmission, electronic communication or other mutually acceptable means provide to PLC data required for PLC to calculate each Assigned Employee's compensation. PLC shall then by facsimile transmission, electronic communication or other mutually acceptable means provide to Customer an invoice for payment of an amount calculated by multiplying the total gross wages each classification of employee has earned by the applicable factor set forth in Schedule A attached hereto. Customer shall then remit payment of the invoice amount to PLC within twenty-four (24) hours of its receipt of the invoice, but in no event later than the time required for PLC to receive funds by 4:00 p.m. EST of the day payroll is to be sent to Customer for distribution to Assigned Employees. Any amount not paid when due pursuant to such specific payment terms and conditions shall be assessed a late charge of 2% or the maximum allowable by law. The payment of a late charge does not prevent a default under this Agreement, or the enforcement of any remedies upon default including termination of this Agreement without notice, notwithstanding any other provision of this Agreement.

    1.3 **Medical Insurance**
    All PLC employees leased to Customer shall be eligible to procure medical insurance through a group plan provided by PLC unless disqualified by the insurer or unless insurance is otherwise made unavailable. The allocation of the cost of said plan shall be in accordance with 7.3 Benefit or Welfare Plans and Schedule B attached hereto if applicable.

    Payment of administrative fees, if applicable and as set forth in Schedule B, will be payable on the date billed for all Assigned Employees on the payroll as of the first day of the month covered by such billing.

PLAINTIFF'S EXHIBIT 4

1

The factors set forth in Schedules A and B (if Schedule B is applicable) are subject to adjustment by PLC, following notice thereof to Customer, based upon changes in local, state and/or federal employment laws or changes in insurance requirements or costs.

2.  **Responsibilities and Obligations of PLC**

    **2.1  Supplying and Supervising of Personnel**
    PLC shall provide specific personnel ("Assigned Employees") to Customer in accordance with Customer's expressed needs and as agreed between Customer and PLC.

    PLC reserves the right of direction and control over Assigned Employees and retains the authority to hire, establish wages, fire, discipline, and reassign Assigned Employees. PLC may consult with Customer in the performance of these responsibilities.

    PLC shall give written notice of the relationship between PLC and Customer to each Assigned Employee furnished to Customer, which notice may be included in PLC's at will employment agreement with each Assigned Employee.

    To the extent that Customer refers or directs any applicant to PLC, Customer will provide PLC with the applicant's fully completed employment packet (see Section 3.1) as needed by PLC to make an employment decision with respect to such applicant. Each applicant's employment packet shall also include the expected date and time of hire and job description if Customer possesses such information. An applicant becomes a PLC employee under this Agreement only after the application has been approved by PLC, which PLC may decline in its sole discretion, and the applicant has been assigned to Customer to fill the applicable job requirements. If the applicant performs any service for or at the request or direction of Customer prior to the completion of the aforementioned procedure, such applicant shall be deemed to be employed solely and exclusively by Customer.

    **2.2  Payroll**
    PLC shall be responsible for the payment, processing and issuance of the Assigned Employees' wages without regard to payments by Customer to PLC required hereunder.

    **2.3  Payroll Taxes**
    PLC shall be responsible for withholding and payment of all payroll taxes including income tax, social security tax, unemployment contribution (in those states that allow PLC to be the employer of record for such purposes) and other payroll taxes as may be required under state and federal laws with respect to Assigned Employees. As to such payroll taxes, PLC shall prepare and timely file with the proper governmental agencies or authorities all required returns and reports. PLC hereby agrees to indemnify Customer for payments directly resulting from or incurred due to PLC's failure to comply with its obligations stated herein, provided reasonable prior written notice of such failure and request for payment is given to PLC by Customer.

    **2.4  Worker's Compensation Insurance**
    PLC shall obtain and pay the costs of providing workers' compensation insurance and shall manage workers' compensation claims. PLC shall furnish to Customer a certificate of insurance evidencing the issuance to PLC of policies providing such coverage. PLC and Customer shall be co-employers of Assigned Employees for purposes of the exclusive remedy provisions of workers' compensation laws. PLC hereby agrees to indemnify and hold Customer harmless from and against all workers' compensation claims brought against Customer by any Assigned Employee(s). Following termination of this Service Agreement, Customer shall have the right, upon reasonable request, to receive from PLC loss experience data relating to Assigned Employees performing services for Customer during any period that the Service Agreement was in place.

Duniphin v. BWI (Federal)
PeopLease 000003

### 2.5 Workplace Safety

PLC retains the right of direction and control over management of safety, risk and hazard control at the work sites affecting its Assigned Employees, including, at its sole discretion, (i) performing safety inspections of Customer's premises and (ii) assisting Customer with the promulgation and administration of employment and safety policies as may be deemed necessary by PLC. Customer shall permit, with reasonable notice, PLC, its workers' compensation insurance carrier or designated representatives access to Customer's worksite and records for purposes of verification of job duties and compensation of assigned employees, and to verify compliance with safety requirements. Such inspection rights shall be permitted for up to one year following the close of any policy period during which Assigned Employees performed services for Customer even if such one year period expires after termination of the Service Agreement.

### 3. Responsibilities and Obligations of Customer

Although PLC assumes the rights, responsibilities and duties as the co-employer of the Assigned Employees as set forth in Section 2, Customer retains the right to reject and/or seek the termination of any worker assigned to it by PLC, so long as that rejection or termination instruction does not violate Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Age Discrimination and Employment Act, or any similar law, rule or regulation governing employment relationships generally as amended, enacted now or later by any federal, state or local government entity. As requested by Customer, PLC will provide guidance regarding compliance with these and other state and federal laws affecting Assigned Employees, but PLC shall in no event be responsible for providing guidance related to Title III of the ADA (e.g., making the facility accessible to the public, etc.), nor for the cost of providing such reasonable accommodation under Title III. The Customer shall maintain full responsibility for conducting its business, including, as appropriate, the manufacturing of products, and/or the performance of services and assist PLC in the determination of the level of wages to be paid to Assigned Employees consistent with state and federal wage and hour law, retain authority for work site premises in conjunction with recommendations by PLC, and shall retain full responsibility for any third party subcontractor, independent contractor or employee who is not an Assigned Employee.

### 3.1 Employee Information

For all individuals Customer refers to PLC for possible employment, whether formerly employed solely by Customer or new applicants, Customer shall provide to PLC an employment packet containing information and documentation regarding such individuals, including, but not limited to, applications, W-4 forms, I-9 forms, cafeteria plan election forms, and information regarding each employee's job class, rate of pay, legally required withholdings and deductions. To the extent that PLC is required to or otherwise engages in employee background checks as permitted by law, Customer shall cooperate in conducting such pre-employment and/or post-employment background investigations.

### 3.2 Discrimination

Customer and its officers, directors, employees and agents shall not take or fail to take any action that, if PLC's Assigned Employees were Customer's sole employees, might cause or result in the filing of a claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act or any other such similar law, rule or regulation governing employment relationships generally, as amended, enacted now or later by any federal, state or local government entity. Customer shall immediately notify PLC of any such complaint of discrimination, whether or not filed as a claim under any applicable law with any appropriate court or agency, and Customer shall fully cooperate with PLC in PLC's investigation of any such complaint by an Assigned Employee. Failure to report any such complaint or to fully cooperate in the investigation of such complaint shall be deemed a material breach of this Service Agreement by Customer.

### 3.3 Proper Authorization

Customer hereby represents, warrants and covenants that it is a duly organized business entity admitted to do business in all states in which it conducts business and has been duly authorized to enter into this Agreement. Customer further represents, warrants and covenants that it has all licenses and permits necessary to operate its business, and it agrees that it will not misrepresent or fail to disclose to PLC key information regarding the nature of work duties, business operations, and locations of workers.

Duniphin v. BWI (Federal)
PeopLease 000004

### 3.4 Costs of Regulatory Compliance

Except as otherwise specified herein, as between PLC and Customer, Customer shall bear the costs and expenses relating to keeping the work environment and equipment in compliance with any and all federal, state and local laws and regulations.

Nothing in this Service Agreement shall exempt Customer or any Assigned Employee from any other license requirements of state, local, or federal law. Any Assigned Employee, where Customer is licensed, registered, or certified pursuant to law, shall be deemed to be an employee of Customer for such licensure, registration or certification purposes, but shall remain an employee of PLC for purposes of workers' compensation, unemployment compensation (in those states that allow PLC to be the employer of record for such purposes) and other employment and employment law compliance issues. Customer shall retain such sufficient direction and control over the Assigned Employees as is necessary to conduct Customer's business and without which Customer would be unable to conduct its business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory, or statutory requirements of Customer.

### 3.5 Assigned Employee Wages

Customer represents, warrants and covenants that it will gather and accurately report to PLC wage information, including wage rates, hours worked or miles driven, or other appropriate means of calculating wages, including any and all fringe benefits bonuses, vacation entitlement, per diem or other expense reimbursements, which forms the basis of each Assigned Employee's compensation. Customer further agrees to maintain such records for the periods of time required by any applicable federal, state or local law.

### 3.6 Withholding of Wages

If Customer requests PLC for any reason whatsoever to stop payment on a check to an Assigned Employee or withhold any portion of an Assigned Employee's wages in reimbursement of any costs assessed by Customer or otherwise, Customer agrees to indemnify, defend and hold harmless PLC, its officers, directors, employees, agents and representatives, from and against any and all claims, expenses (including but not limited to court costs and attorney fees), liabilities and administrative penalties, whether known or unknown, which PLC may incur or become liable for or which may be asserted or claimed against PLC, in whole or in part, as a result of the stop payment or withholding.

### 3.7 Customer's Liability for Taxes on Per Diem

If Customer requests that PLC provide per diem allowances for Assigned Employees, Customer acknowledges that to the extent that Section 274(n) of Internal Revenue Code of 1986, as amended, or any other provision of the federal, state or local law limits the deductibility of any per diem allowance for tax purposes, Customer shall solely bear responsibility for all taxes imposed under the aforementioned Section 274(n) or any successor comparable provision of federal, state or local law as a result of any limits upon the deductibility of such per diem allowances. Customer agrees to remit the amount of such taxes to the proper taxing authorities regardless of upon which party the limitation is imposed and further agrees to adhere to this allocation of tax liability resulting from the limitation on per diem allowance deductibility with respect to all federal, state or local tax returns filed by Customer covering any period under which this Service Agreement is in effect. Customer agrees to indemnify, defend and hold harmless PLC, its officers, directors, employees, agents and representatives from and against any and all tax claims, expenses (including but not limited to court costs and attorney fees), liabilities and administrative penalties, whether known or unknown, which PLC may incur or become liable for or which may be asserted or claimed against PLC by any taxing authority as a result of Customer's failure to properly report and assume responsibility for per diem deductibility limitations.

### 3.8 Notice Regarding Assigned Employee's Failure to Work

If Customer fails to notify PLC, within twenty-four (24) hours, of any Assigned Employee's failure to report to Customer for work, either because the Assigned Employee has voluntarily chosen not to continue to perform services for Customer or because Customer has determined that it no longer wishes Assigned Employee to perform services, Customer agrees to indemnify, defend and hold harmless PLC, its officers, directors, employees, agents and representatives, from and against any and all unemployment claims, expenses (including but not limited to court costs and attorney fees), liabilities and administrative penalties, whether known or unknown, which PLC may incur or become liable for or which may be asserted or claimed against PLC in whole or in part by Assigned Employee. Customer confesses and acknowledges the receipt and sufficiency of independent consideration for this indemnification.

Duniphin v. BWI (Federal)
PeopLease 000005

3.9     Workplace Safety

a.      Customer will, at its own expense, comply with all applicable health and safety laws, regulations, ordinances, directives, and rules. Customer will ensure compliance with safety policies and procedures, adopted by PLC, and the use of protective equipment required by federal, state or local law. Customer will immediately (at least within 24 hours) notify PLC of any workplace injury, occupational sickness or disease or cumulative trauma injury of any Assigned Employee. Customer agrees to cooperate with PLC in meeting its injury reporting and claims filing requirements and other procedures related to a workplace injury or sickness under applicable laws, rules and regulations, including, but not limited to, those relating to workers' compensation. In the event that Customer fails to immediately notify PLC of any workplace injury, occupational sickness or disease or cumulative trauma injury incurred by any Assigned Employee, Customer agrees to reimburse PLC for any additional charges, costs and expenses, including, but not limited to, attorney fees accruing as a result of the delay in reporting said workplace injury, occupational sickness or disease, or cumulative trauma. In the event that Customer's delay in notifying PLC impairs PLC's ability to investigate a workers' compensation claim by a PLC Assigned Employee assigned to Customer or prejudices PLC's defense of such a claim, Customer agrees to indemnify PLC for all charges, costs and expenses, including but not limited to, attorney fees incurred by PLC in defending and/or paying what may have otherwise been a non-compensable claim or through which customers failure or delay in notifying PLC results in increased liability for PLC. The reimbursement and indemnification is in addition to any other such reimbursement and indemnification which may otherwise apply hereunder and not in lieu thereof.

b.      If Customer fails to promptly comply with any written safety or health recommendation from PLC or its agents or with any provision under this section, PLC may terminate this Agreement by written notice effective the later of (i) five (5) working days after delivery of notice, or (ii) the end of PLC's next regular pay period. If Customer does not desire to comply with any written safety recommendation, Customer may terminate this Agreement by written notice effective the later of (i) five (5) working days after delivery of notice, or (ii) the end of PLC's next regular pay period. Where such worksite conditions are, at PLC's sole discretion, found to be so unsafe as to create an emergency, such termination shall be effective immediately at PLC's option.

c.      If PLC discovers, whether by inspection or otherwise, that Customer's working conditions pose an immediate danger to or threaten the safety of PLC's Assigned Employees, or violate any federal, state or local law, rule or regulation, PLC may immediately remove its Assigned Employees from Customer's work site without liability, until such time as the working conditions are made safe and legal. Customer's failure to immediately rectify unsafe or otherwise illegal working conditions shall be considered a breach of this Agreement and its immediate termination pursuant to Paragraph 7 of this Agreement. However, in no event shall PLC's placement of Assigned Employees back in Customer's work site in any way serve as an indication of the safety or legality of such work site. Any inspection conducted by PLC is for PLC's own benefit and not for the benefit of Customer, PLC's Assigned Employees or any third party, and PLC shall not be liable to anyone for negligent inspections or a failure to conduct such inspections.

d.      Customer shall assist in implementing and enforcing PLC's safety plan provided by PLC or other safety plan previously implemented by Customer and accepted in writing and adopted as policy by PLC. Customer shall provide, and ensure the use of by Assigned Employees, all personal protective equipment as required by the safety plan or any federal, state or local law, regulation, ordinance, directive, or rule. PLC shall have the right (but not the obligation) upon reasonable notice to make periodic safety inspections during regular working hours wherever Assigned Employee are working, and made

Duniphin v. BWI (Federal)
PeopLease 000006

recommendations pertaining to job safety. It is agreed and understood that PLC, in either inspecting or not inspecting Customer's premises for safety purposes, assumes neither liability nor responsibility for any unsafe working conditions which may exist or liability resulting there from. PLC shall have no liability to Customer or any Assigned Employee or third persons for failing to conduct such inspection or for a negligent inspection.

  e. Customer shall cooperate with and assist PLC in implementing and enforcing the PLC drug and alcohol policy or other drug and alcohol policy accepted in writing and adopted as policy by PLC.

### 3.10 Collective Bargaining

Customer and PLC shall agree as to each other's responsibility for negotiating the terms of any necessary collective bargaining agreement with bargaining representatives of Assigned Employees, and the handling of any and all administration or labor-related matters pursuant to such agreements including, but not limited to, grievances, wages, benefits, hours, working conditions and other related items. The terms of this understanding as to collective bargaining and organized labor matters are set forth in Appendix I. Customer shall immediately (within one day whenever possible) notify PLC of all organizing and collective bargaining matters.

### 3.11 Light Duty Return to Work Programs

Customer agrees to assist PLC in establishing light duty return to work programs at Customer's location for the purpose of returning Assigned Employees to work during rehabilitation and in light of restrictions placed upon the Assigned Employee by a treating physician following any work-related injury incurred while the Assigned Employee was assigned to Customer.

### 3.12 Sharing of Information

Customer agrees to cooperate with PLC and to share information with PLC as necessary for the performance of this Agreement. Customer further agrees to cooperate with PLC in defense of any employment-related lawsuit, claim, charge or investigation related to Assigned Employees, including providing reasonable access to PLC and/or its agents to pertinent information relating to Assigned Employees and/or Customer's work site.

### 3.13 Certificate of Insurance

Customer shall provide PLC with a certificate of insurance naming PLC as an additional insured evidencing full workers' compensation coverage of any non-Assigned Employee or other individual employed by Customer, as well as require all subcontractors and/or independent contractors utilized by Customer to provide certificates of workers' compensation coverage and written certification executed by such independent contractor acknowledging that such independent contractor and any employees of such independent contractor are not employees, statutory or otherwise of PLC prior to commencement of services for Customer. Customer shall unconditionally defend and indemnify PLC, its agents, shareholders, non-leased employees, officers, directors, assigns, insurers and representatives for, and hold them harmless from and against any costs, expenses, fees, settlements, judgments, losses or damages of any nature incurred by PLC as a result of Customer's failure to secure such workers compensation certificates and certifications.

## 4. Responsibilities and Obligations of Both Parties

### 4.1 Regulatory Compliance

PLC and Customer shall comply with all federal, state and local employment laws and regulations, and PLC and Customer shall cooperate with each other as necessary to enable each other to perform such compliance.

### 4.2 Unlawful Acts

Neither party hereto shall require any Assigned Employee to do any unlawful act.

### 4.3 Withholdings Not Permitted

Neither party shall make or effect any deduction or withholding from the pay of any Assigned Employee except for deduction or withholdings required or permitted by law and except for any deduction or withholding to which the Assigned Employee consents by a signed writing which specifies the reason for, date of,

Duniphin v. BWI (Federal)
PeopLease 000007

and amount of such deduction or withholding. This provision shall not apply to any applicable per diem related adjustments.

### 4.4 Insurance

The parties acknowledge and agree that PLC is not an insurer, insurance agent or insurance broker procurer or broker of insurance products, or agent selling the Customer insurance or insurance products. As an employer, PLC shall provide insurance for the benefit of itself and its Assigned Employees including but not limited to workers' compensation insurance, unemployment compensation insurance and general liability insurance. Customer is not a party to any of PLC's insurance contracts which insure any of PLC's employer obligations or employee benefit plans. Additionally, Customer acknowledges that it is not a co-sponsor of such plans. Customer understands that the cost of the employee benefits or PLC's employer obligations is part of PLC's cost of doing business and does not constitute an additional expense charged to Customer.

Customer, with respect to Assigned Employees furnished by PLC, shall:

a. Provide and maintain public liability and property damage insurance with coverage in the amount of One Million Dollars ($1,000,000) combined single limit.

b. In addition to the insurance described in paragraph 4.4a. carry all customary insurance, including but not limited to public liability, auto, general, collision, cargo, umbrella or the like.

c. Have the insurance policy or policies evidencing the required insurance in paragraphs 4.4.a and b above written by reputable insurance company or companies rated A+ or better by A.M. Best and authorized to transact business in all of the states in which Customer transacts business. Customer shall name PLC as an additional insured under all such policies. The policy shall provide that they may not be canceled without thirty (30) day notice to PLC. Customer shall furnish PLC certificates or other evidence satisfactory to PLC of the foregoing insurance requirements.

d. Indemnify and hold PLC harmless against any and all loss, fine, or penalty imposed upon PLC or incurred by PLC by reason of Customer's violation, failure, commission or omission to enforce any of the provisions of the preceding paragraphs of this Section 4 or by reason of Customer's violation of any regulations, laws or the like promulgated by federal and state agencies.

### 4.5 Cooperation in Defense

To the extent that their interests do not conflict, the parties agree to cooperate in the defense of any claim brought against either or both of the parties on the basis of the relationship created by the parties hereunder. However, this provision shall in no way alter the responsibilities of each party as otherwise set forth herein.

### 4.6 Termination of a Specific Employee Lease

PLC shall have the exclusive right to terminate Assigned Employees covered by this Agreement. Immediately upon notice from Customer of its decision to no longer lease any specific PLC employee, Customer shall provide, by facsimile transmission or electronic communication, notice to PLC's operations department, listing the name, social security number and reason for its decision. Immediately upon termination of any Employee by PLC, for any reason, PLC shall provide fax notice to Customer's operations department listing the name, social security number and reason for termination of such employee.

### 4.7 Status of Assigned Employees

Assigned Employees shall be considered the employees of PLC in all respects including but not limited to unemployment compensation (in those states in which PLC is allowed to be the employer of record for such purposes), workers' compensation, employer's FICA, group life insurance (if any), group health insurance (if any), 401(K) retirement program (if any), and other such employee-related payroll and benefit duties and obligations.

5. **Indemnifications**

  5.1 **Indemnification for Matters Relating to Assigned Employees**
  PLC shall indemnify, defend and hold Customer harmless from and against any and all liability, expense (including court costs and attorney fees), and claims for damage of whatever nature for which Customer may become liable or which may be asserted or claimed against Customer as a result of (1) PLC's failure to pay wages to Assigned Employees when due after Customer has properly provided wage and payroll information pursuant to this Service Agreement; (2) PLC's failure to withhold, deposit or otherwise pay appropriate payroll taxes with respect to Assigned Employees; or (3) PLC's failure to provide workers' compensation insurance covering Assigned Employees, except as outlined on Schedule A attached hereto.

  5.2 **Indemnification of PLC by Customer**
  Customer shall unconditionally indemnify, defend and hold harmless PLC, its subsidiaries, affiliates and their respective shareholders, officers, directors, agents, employees (other than Assigned Employees), attorneys and representatives against all liability or loss from and against all claims, actions, suits or demands based upon or arising out of damage or injury (including death) to person or property caused by or sustained in the connection with the performance of this Service Agreement, without limit and without regard to the cause or causes thereof and without regard to the negligence of any party or parties, and without regard to the fault of any party or parties.

  5.3 **Indemnification for matters relating to Persons who are not Assigned Employees**
  Customer shall assume complete and exclusive responsibility for all matters pertaining to the following categories of persons: all persons (a) hired by Customer and (b) on Customer's payroll. Customer shall unconditionally indemnify PLC, its agents, shareholders, officers, directors, assigns, and representatives, for and hold them harmless from and against any costs, expenses, fees, settlements, judgments, losses or damages of any nature incurred as a result of or arising from claims or demands of or relating to such persons.

  5.4 **Indemnifications for Employee Benefit Matters**
  Each party shall assume complete and exclusive responsibility for all matters including, but not limited to, ERISA, tax and COBRA matters, pertaining to employee welfare or benefit plans sponsored, offered, or administered by such party. Each party shall unconditionally indemnify the other party, its agents, shareholders, officers, directors assigns and representatives for and hold them harmless from and against any and all costs, expenses, fees, settlements, judgments, losses or damages of any nature, incurred as a result of or arising from claims or demands relating to such plans.

  To the extent that Customer maintains and makes available any benefit programs to Assigned Employees, including, but not limited to, pension, health and welfare, and any other benefit plans, whether or not subject to ERISA, such programs shall be deemed exclusively sponsored, offered and administered by Customer. Customer agrees to indemnify, defend and hold harmless PLC, its officers, directors, employees (other than Assigned Employees), agents and representatives, from and against any and all claims, expenses (including, but not limited to, court costs and attorney fees), liabilities and administrative penalties, whether known or unknown, which PLC may incur or become liable for or which may be asserted or claimed against PLC, including, but not limited to, claims relating to COBRA matters, in whole or in part, as a result of such Customer sponsored benefit plans.

  5.5 **Indemnification of Certain Payroll Deductions**
  Customer acknowledges and agrees that certain non-tax related deductions recorded on employee check stubs, including deductions for Customer sponsored benefit plans, or certain advances, are for monies due from the employee to Customer. Such deductions will be noted on the invoice submitted by PLC to Customer and will be reimbursed to Customer by deducting them from the gross amount due PLC by Customer. Customer is solely and exclusively responsible for such monies. Customer further agrees to provide certified proof to PLC upon request by PLC that such monies are properly maintained and remitted to the appropriate persons or entities at the appropriate times or otherwise demonstrated to the satisfaction of PLC that Customer has maintained, deposited or remitted said monies to the appropriate persons or entities at the appropriate times. Customer shall unconditionally indemnify PLC, its agents, shareholders, non-leased employees, officers, directors, assigns, insurers and representative for and hold them harmless from and against any costs, expenses, fees, settlements, judgments, losses or damages of any nature incurred as a result of or arising from claims or demands relating to such monies.

Duniphin v. BWI (Federal)
PeopLease 000009

5.6  Indemnification for Acts or Omissions of Customer

Customer agrees that it shall indemnify PLC for any of Customer's, or its agent's, acts or omissions that result in damages, costs or expenses for which PLC is or may be held liable. Such indemnification shall include reimbursement to PLC of all PLC's expenditures and prepayment of all expenditures reasonably expected to be incurred by PLC.

6. Termination

As set forth in Section 1.1 above, this Agreement shall continue in successive one year terms unless terminated in one of the following ways:

a.  Either PLC or Customer may immediately terminate this Agreement in the event of breach by the other of any term or obligation of this Agreement.

b.  In addition, PLC may immediately terminate this Agreement if it, in its sole discretion, determines that a material adverse change has occurred in the financial condition of Customer, or that Customer is unable to pay its debts as they become due in the ordinary course of business. Customer agrees to notify PLC of its insolvency or its intention to file bankruptcy or close its business.

c.  Either party may terminate this Agreement, with or without cause, upon thirty (30) days written notice, to the other party in accordance with the notice provisions of this Agreement.

d.  The Agreement may be terminated by mutual written agreement of the parties.

If this Agreement is terminated by either party in accordance with the terms and notice required under this Agreement, PLC shall immediately notify Assigned Employees in writing of the effective date of the termination of this Agreement (the "Termination Date") and that no further services should be performed by Assigned Employees on behalf of PLC for Customer subsequent to the Termination Date. In the event that the Assigned Employees do not contact PLC prior to the Termination Date, the Assigned Employees will be deemed to have voluntarily terminated employment with PLC as of the Termination Date and PLC will have no further obligation to pay them or on their behalf, wages, payroll taxes, Assigned Employee benefits, insurance premiums or other amounts as of the Termination Date.

To the extent that the Assigned Employees either expressly or impliedly terminate employment with PLC on or before the Termination Date, and thereafter continue to perform services for Customer, Customer shall be liable for any damages or penalties imposed or adjudicated as a result of any failure to pay wages, payroll taxes, Assigned Employee benefits, insurance premiums or other amounts to or on behalf of former Assigned Employees of PLC on and after the Termination Date. Customer shall indemnify, defend, and hold harmless PLC, its agents, employees, representatives, directors and officers, from and against any and all liability, expenses (including but not limited to court costs and attorney fees), penalties, and claims for damages of any nature, whether known or unknown, which PLC may incur as a result of Customer's failure to pay wages, payroll taxes, Assigned Employee benefits, insurance premiums or other amounts to or on behalf of former PLC Assigned Employees who continue to perform services at the request or direction of Customer on and after the Termination Date. Customer confesses and acknowledges the receipt and sufficiency of independent consideration for this indemnity provision.

The obligation of either party to notify, defend and hold harmless the other under the terms of this Agreement shall continue after the Termination Date with respect to events occurring prior to the Termination Date.

Upon the termination of this Agreement, both parties agree to promptly surrender and return to the other party any and all certificates or binders of insurance previously received from the other party.

Duniphin v. BWI (Federal)
PeopLease 000010

7. General Provisions

   7.1 Independent Contractor Relationship
   PLC shall be an independent contractor of Customer and shall not be its principal, director, agent, master, servant, employer or employee.

   7.2 Third Party Beneficiaries
   The parties acknowledge and agree that no parties other than the parties hereto are intended to benefit hereunder.

   7.3 Benefit or Welfare Plans
   Customer acknowledges that PLC has an employee welfare plan available for its employees. If Customer does not desire the employees leased hereunder to enroll in such plan, it acknowledges that PLC will not offer enrollment to any of the employees leased hereunder. Customer understands that the health insurance carrier requires that each client pay not less than 50% of the least expensive single employee cost of insurance and maintain not less than 50% employee participation at all times. Health insurance is offered on a calendar month basis only; new employees may join only on the first day of the month following 90 days of employment, and terminating employees must be covered through the end of the month of termination. An employee working for any portion of the month must be covered for the entire month, and Customer must pay their agreed portion of the coverage for the entire month. If PLC is not notified of an employee's termination in a timely fashion, thereby not allowing the balance of the month's insurance premiums to be withheld from the final pay check, or if the final check is too small to allow the premiums to be withheld, Customer agrees to pay the balance of the employee's portion for the month.

   7.4 Limitation of Services
   PLC will only provide those services specified herein and no other services shall be provided or implied, including without limitation, any strategic, operational or other business-related decisions with regard to Customer business. PLC will provide no equipment to the Assigned Employees.

   7.5 Notices
   All notices which are required or may be given with respect to this Agreement shall be properly made if (a) delivered in writing personally, or (b) sent by facsimile transmission, or (c) sent by U.S. Mail addressed to the party at its address shown below. If Customer relocates, closes its office(s), or for whatever reason establishes a new or additional address, Customer is obligated to notify PLC immediately of the relocation, closure of office(s) or new contact address, telephone and electronic communication address.

   PLC                                  Customer
   PeopLease Corporation                BENNY WHITEHEAD, INC.
   210 Wingo Way, Suite 400             P.O. Box 573
   Mount Pleasant, SC 29464             Georgetown, GA 39854-0573

   7.6 Assignability
   This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto, but may not be assigned by either party until such assignment shall have been consented to in writing signed by the parties.

   7.7 No Waiver of Rights
   The failure of either party strictly to enforce any provision hereof shall not be construed as a waiver thereof or as excusing either party from future performances in strict accordance with the provisions of this Agreement.

   7.8 Applicable Law
   This Agreement shall be determined to be a contract made within the State of South Carolina and for all purposes shall be governed and construed under and in accordance with the laws of the State of South Carolina. Any actions, lawsuits, alternative dispute resolution proceedings, special proceedings or other proceedings that may be brought arising out of, in connection with or by reason of this Agreement shall be brought in Charleston County, South Carolina.

Duniphin v. BWI (Federal)
PeopLease 000011

### 7.9 Business Interruption

Neither party shall be liable to the other for any loss of business or any other damage, including but not limited to, profits, good will, special, incidental or consequential damage, which results from performance of each party's obligations hereunder, or from war, fire, strike, picketing, accident, acts of God, labor disputes, civil disturbances, riots or any other cause beyond the reasonable control of the parties.

### 7.10 Time of Performance

Time is of the essence with respect to performance of all obligations set forth herein.

### 7.11 Severability

If, pursuant to federal, state or local law, any provision of this Agreement shall be found by a court of competent jurisdiction to be null and void or unenforceable, all other provisions of this Agreement shall remain in full force and effect.

### 7.12 Modification of Agreement

No waiver or modification of this Agreement or of any covenant, condition or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith, and no evidence of any waiver or modification shall be offered or received in evidence of any proceeding, arbitration or litigation between the parties hereto arising out of or effecting this Agreement, where the rights or obligations of the parties hereunder unless such waiver or modification is in writing, duly executed as aforesaid, and the parties further agree that the provisions of this section may not be waived except as herein set forth.

### 7.13 Expenses

Customer shall pay PLC's reasonable costs and expenses, including attorney fees, incurred in exercising any of the rights or remedies hereunder of enforcing against Customer any covenant, term or condition of this Agreement.

### 7.14 Integration

This document, together with the schedules attached hereto, constitutes the full, complete, absolute and entire agreement between the parties. There are no oral representations, agreements or understandings affecting the same and any further such representations, agreements, understandings or waivers, in order to be binding upon the parties thereto, must be reduced to writing and signed by the parties.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

PeopLease Corporation

_____  
Charles R. Schellenger, President

_____  
D.W. Speer, Secretary

BENNY WHITEHEAD, INC.

By: _____  
Benny Whitehead, President

Attest: _____  
Amy Culpepper, Vice President

11

Duniphin v. BWI (Federal)
PeopLease 000012

## SCHEDULE "A"

### VARIABLE COST

The following formula shall be used in calculating the Variable Cost of employment services on a weekly basis:

Total employees' gross payroll multiplied by a factor of:

| FACTOR | STATE | WORKERS' COMPENSATION CODE | WORKERS' COMPENSATION CLASSIFICATION |
|---|---|---|---|
| 1.1602 | GA | 7229 | Drivers (With Per Diem) |
| 1.2261 | GA | 7229 | Drivers (No Per Diem) |
| 1.1470 | GA | 8380 | Auto Shop & Repair Center Mechanics |
| 1.1096 | GA | 8810 | Office / Clerical |

<u>Note</u>: Federal Express shipping charges will be added to invoice if less than ten employees are paid in any pay period or if Customer requests additional shipments.

PeopLease Corporation

_CR Schellenger_  
Charles R. Schellenger, President

_[signature]_  
D.W. Speer, Secretary

BENNY WHITEHEAD, INC.

By: _Benny Whitehead_  
Benny Whitehead, President

Attest: _Amy Culpepper_  
Amy Culpepper, Vice President

12

Duniphin v. BWI (Federal)
PeopLease 000013

# APPENDIX I

## COLLECTIVE BARGAINING AND ORGANIZED LABOR

Customer acknowledges that any Collective Bargaining Agreement ("CBA") obligations that it may have are solely its responsibility and that PLC has no duties or responsibilities associated with any such Collective Bargaining Agreements. Customer agrees to indemnify and hold harmless PLC for any liability or damages sustained by PLC arising out of any collective bargaining obligations.

A. Customer acknowledges and agrees that it is bound and will abide by the National Labor Relations Act ("NLRA"). Customer's decision to operate subject to a CBA is a core business decision made by and belonging solely to Customer, and Customer further acknowledges that it is thereby responsible for all decisions related to Union organizing campaigns, negotiation of CBA's, the processing of grievances and arbitration under any and all CBA's to which it is now or may later become bound. If Customer was signatory to a CBA prior to executing this Agreement, Customer will remain signatory to the CBA and will continue to recognize and bargain with any Union with which it was affiliated prior to signing this Agreement as the exclusive bargaining representative of the Assigned Employees. The establishment of the Agreement between Customer and PLC shall not alter, abrogate, amend, modify or change in any manner the obligations of Customer and any such Union under the CBA, the NLRA, the Labor Management Relations Act ("LMRA") or any other federal or state labor laws.

B. **Dues Deductions**. While the Agreement remains in effect whereby PLC employs and provides bargaining unit employees to Customer, PLC will administer the terms of the CBA that come within the personal management responsibilities of PLC under the Agreement. PLC will, upon receipt of signed legal authorizations from Assigned Employees that are bargaining unit employees, deduct from the wages of such Assigned Employees, dues or service charges for the Union and transmit such deductions to the Union in accordance with the CBA. PLC and Customer acknowledge that, in doing so, PLC is acting in a purely administrative capacity and is not, by virtue of the transmittal of dues or services charges to the Union, assuming any contractual responsibilities under the CBA or any obligation to recognize or bargain with the Union.

C. **Benefit Fund Contributions**. Customer will continue to be responsible for the payment of any contributions owed under the terms of the CBA to applicable Fringe Benefit Funds covered in the CBA, but such contribution payment shall be remitted by PLC to such Fringe Benefit Funds on behalf of Customer. The parties understand and acknowledge that PLC shall have no withdrawal liability to applicable Fringe Benefit Funds or any other trust funds under the Multi-Employer Pension Plan Amendments Act or any other federal, state or local law or regulation.

D. Customer and PLC acknowledge that this Agreement does not provide for services related to Union organizing drives, nor does it include any obligation on the part of PLC to formulate Customer's response to Union organizing activity. PLC will, however, assist Customer as to any information related to employee wage histories or personnel records maintained by PLC. Customer shall continue to be obligated under this Agreement to comply with the requirements imposed under the Worker Adjustment and Retraining Notification Act ("WARN"), the NLRA and LMRA.

**Indemnification**. Customer shall defend, indemnify and hold PLC harmless from any expense, loss, damage, claim or liability whatsoever arising out of or relating to any violation by Customer of such CBA's and the commission of any unfair labor practice by Customer, its employees or agents. Any withdrawal liability arising out of or in connection with any action or inaction by Customer shall be Customer's sole responsibility. Such duty to indemnify, defend and hold harmless shall extend beyond the termination of this Agreement.

Rev 1/1/2004

Duniphin v. BWI (Federal)
PeopLease 000014